WALTERS & HEMMING, INC., *v.* ANDRES.

1. Set-Off and Recoupment—Evidence.

Finding of trial court that defendants were not entitled to set-off arising from claimed injury to house by reason of plaintiff's delay over a winter season in installation of furnace by presenting testimony of the amount or value of any actual damage or estimate as to cost of repairs *held*, supported by record in furnace installer's action for balance due.

2. Assignments—Corporations—Evidence—Pleading.

Plaintiff corporation was entitled to recover balance of account which had been assigned to it by predecessor partners, where assignment was testified to by one of the partners, defendants' notice of set-off recited it was the corporation, not the individual partners, who undertook to install the furnace for balance of cost of which defendants were being sued, and that the corporation was indebted to the defendants for their set-off arising from the delay in installation and the court permitted plaintiff to amend pleadings to entitle corporation as assignee plaintiff.

3. Pleading—Motion to Dismiss—Time for Filing.

A motion to dismiss action as to a defendant based upon the disability of such defendant appearing on the face of the declaration must be filed within the time for pleading (Court Rule No 18, § 1 [1945]).

4. Husband and Wife—Set-Off—Admissions—Estoppel—Coverture.

The pleading of a set-off and insisting throughout action in lower court and upon appeal that defendant husband and wife were

---

References for Points in Headnotes

[1] 47 Am Jur, Set-off and Counterclaims § 102.
[2] 4 Am Jur, Assignments § 128; 47 Am Jur, Set-off and Counterclaims § 108.
[3] 39 Am Jur, Parties §§ 105, 106.
[4] 27 Am Jur, Husband and Wife § 617.

entitled jointly to set off damages for delayed installation of
a furnace constitutes an admission that the indebtedness of
defendants to plaintiff for the installation of plumbing and
heating is a joint obligation and estops defendant wife from
raising defense of coverture (CL 1948, § 26.161 *et seq.;*
§ 26.181 *et seq.*).

Appeal from Grand Traverse; Brown (Charles
L.), J. Submitted June 18, 1954. (Docket No. 74,
Calendar No. 46,198.) Decided October 4, 1954.

Assumpsit by Walters & Hemming, Inc., a cor-
poration, against Andrew Andres and Cecelia An-
dres for sums due for installation of furnace. De-
fendants filed set-off claiming damages arising from
untimely installation. Judgment for plaintiff for
full amount, notwithstanding verdict of reduced
sum. Defendants appeal. Affirmed.

*Murchie, Calcutt & Griffin,* for plaintiff.

*Harry T. Running* and *Charles H. Menmuir,* for
defendants.

REID, J. Plaintiff sued defendants for balance
claimed to be due it for the installation of a heating
furnace and plumbing installed in the newly-con-
structed residence of defendants and for later con-
verting the furnace to an oil-burning unit, claiming
the amount with interest due it to be $2,089.98. De-
fendants make a general denial of the allegations in
the declaration and claim a set-off of $6,000. The
case was tried and submitted to the jury and the
jury returned a verdict in favor of plaintiff for $1,-
000, apparently allowing $848.42 to the defendants
on their set-off.

Plaintiff claims that the defendants contacted
· Walters of the plaintiff corporation in the spring of
1946, and denies defendants' claim that it agreed to·

install a furnace and furnish heat in 1945. Plaintiff claims, as testified to by Mr. Walters, that the plaintiff's records kept in the course of business showed that no material was delivered to defendants' house until April 4, 1946, and that no workmen were sent to the job until April 24, 1946, and further, that the furnace, a coal-burning unit, was installed in defendants' house in December, 1946. Plaintiff further claims that in August, 1947, defendants paid $1,265 on account, and that plaintiff in October, 1947, at defendants' request, converted the furnace into an oil-burning unit. Plaintiff claims that on November 4, 1947, it sent a statement to defendants which was received by defendants, for labor and material furnished in connection with the installation of plumbing and heating, showing an original charge of $2,812.98 and a credit for the payment of $1,265, leaving a balance of $1,547.98 and finally, the addition of $300.44 as a charge for converting the furnace to oil, making a total balance claimed by the plaintiff due it of $1,848.42. Plaintiff further claims it sent a number of statements for the balance thus due between November 4, 1947, and July 8, 1950, when this present suit was commenced. Plaintiff further claims that the testimony of plaintiff's agent, Walters, that no complaint was made by the defendants until a conversation in 1949, stands uncontradicted. Plaintiff further claims that the damage alleged by defendants to have occurred to their house for which they seek adjustment, occurred in the fall and winter of 1945 or 4 years prior to the time complaint concerning such damage was ever made, and plaintiff claims that the payment by defendants on the account without complaint of damage constitutes a waiver of or is inconsistent with, defendants' right to an adjustment or set-off for damages to the house, claimed by defendants to have been caused by the failure of plaintiff to seasonably install the heating

apparatus and prevent freezing in the basement of the house.

Defendants claim that an oral agreement (claimed by plaintiff to be void as contravening the statute) was made between the parties to install a furnace immediately in the fall of 1945 and before freezing weather set in, and that the furnace was not actually installed until late in 1946 and that because the furnace was not installed before the freezing weather began in the fall of 1945, the building, subjected to subzero weather, became permeated by frost to the extent that, notwithstanding a heating stove was kept in the basement, some cement became frozen and the frost caused damage, including cracks in the foundation, and that the basement wall, due to frost, heaved and a 1-inch bow in the upstairs floor resulted therefrom, and that the plaster in the house was badly cracked as a result of the frost heaving up the basement walls.

Defendants claim that they seasonably informed plaintiff of the damage done to their house.

Upon the rendition of the verdict for $1,000 damages, thereby in effect allowing to defendants the sum of $848.42 on defendants' set-off, the court on motion of plaintiff entered judgment for plaintiff notwithstanding the verdict for the full sum of $1,848.42, plus interest of $272.15, and costs.

The court in his opinion among other things found as follows:

"It is undisputed that 4 or 5 statements were sent to defendants, and the defendant Mr. Andres admitted on the stand that he received statements in November of 1947 and February of 1948. No objection was made by defendants as to the correctness of the statements as rendered and no claim for damages was made until suit was started by plaintiff against defendants. Defendants made a payment of $1,265 after receiving the first statement and be-

fore the furnace was converted to oil-burning purposes, for which a further charge of $300.44 was made.

"No evidence was presented of any actual damages or any estimate as to cost of leveling the floors, repair of cracks in the plaster and walls nor of any cost incurred by defendants in mitigation of the damages caused by frost, or of preventing damage to the footings by frost. There was no contract providing for stipulated damages in the event of nonperformance if time was of the essence of any such contract, and from the testimony it appears to this court that there was no contract other than on a time and material basis, and not such contract as provided for stipulated damages.

"It further appears to this court from the testimony presented that if the damages were caused by frost, such damages could have been prevented by the defendants themselves by the exercise of reasonable care, keeping a fire going or spreading a layer of straw over the concrete footings, or that they were caused by failure to reinforce the footings, failure to back-fill, the use of green lumber or some other defect in workmanship or material not the fault of and beyond the control of the plaintiff and for which plaintiff was in no way responsible; and although the jurors were no doubt in sympathy with defendants because of their plight and disappointment in their new house, and perhaps felt the defendants should be given the benefit of any profit made by a corporation, there was actually no legal justification for reducing the amount of plaintiff's bill.

"After consideration of all the testimony it appears to this court that the plaintiff is entitled to recover against both defendants for the balance of its bill in the amount of $1,848.42, plus interest and costs."

A careful examination of the record convinces us that the court was correct in saying that no testimony was presented of the amount or value of any

actual damages or estimate as to the cost of repairing the building, in respect to which the defendants claimed the building was damaged, and that therefore defendants were not entitled to any allowance of set-off or recoupment.

Defendants further claim that there was not shown in the record any assignment from the individual partners to the plaintiff corporation. During the examination of Mr. Hemming as a witness, the following occurred:

"*Mr. Calcutt:* [for plaintiff] Do you feel it is necessary to produce assignments of the account to Walters & Hemming?

"*Mr. Running:* [for defendants] I am here representing Mr. and Mrs. Andres. * * * I don't think it is up to me to tell Mr. Calcutt how to try his lawsuit. * * *

"*Mr. Calcutt:* I will have this marked for identification.

"(Document referred to marked exhibit 2).

"*Q.* [by Mr. Calcutt] Can you tell me what this is, Mr. Hemming? Is that the assignment of this account?

"*A.* This is the assignment of all accounts to Walters & Hemming."

Furthermore, defendants' notice of set-off recites that plaintiff, the corporation, and not the individual partners who undertook the installation of the furnace, was indebted to defendants for defendants' set-off. In view of all that the defendants have said in the record concerning the relationship between the parties, it is evident that the defendants were giving the plaintiff to understand in the trial court that the defendants recognized that the corporation had succeeded to the assets and liabilities of the preceding partnership. Plaintiff offered to amend the pleadings and the court granted the motion.

The following appears in the court's finding:

"Defendants' motion to dismiss because of the failure to allege the type of corporation was made during the progress of the trial, and plaintiff asked leave to amend to show plaintiff, a Michigan corporation, assignees of Walters & Hemming, a copartnership, and Billy Hemming. Decision was reserved by this court.

"Defendants' motion to dismiss is hereby denied and plaintiff's motion to amend is hereby granted, and title of said cause may henceforth appear as Walters & Hemming, Inc., a Michigan corporation, assignees of Walters & Hemming, a copartnership, and Billy C. Hemming.

"Plaintiff's counsel also moved to reopen his case to indicate the obligation of defendants was a joint obligation. This was taken under advisement, and the testimony taken subject to defendants' objection. The record may show that in the opinion of this court said motion should be and the same hereby is granted."

Defendant Cecelia Andres claims that, as a married woman, she is entitled to be exempt from a judgment against her for the cost of improvements to property standing in the joint name of herself and husband and not being her separate property. However, in her testimony she refers to the damages to the building as "*our* damage." (Italics supplied.) Plaintiff claims that by jointly pleading and seeking to recoup damages, the defendants are now estopped from raising a defense as to defendant Cecelia Andres based upon coverture and that the defense of coverture was waived by failure of the defendants to raise the question either by motion to dismiss or as an affirmative defense in the answer.

Certain statutes concerning married women's rights are CL 1948, § 557.1 *et seq.* (Stat Ann § 26.161 *et seq.*), and CL 1948, § 557.51 *et seq.* (Stat Ann § 26.181 *et seq.*). Defendants did not in the lower court file a motion to dismiss as to defendant Cecelia An-

dres, notwithstanding that the defense of coverture now relied on by defendant Cecelia is apparent and was apparent upon the face of plaintiff's declaration.

Court Rule No 18, § 1 (1945), provides that, "Defendant may, within the time for pleading, file a motion to dismiss the action or suit, where any of the following defects appear on the face of the declaration: * * * (i) That the cause of action did not accrue against defendant because of his infancy *or other disability.*" (Italics supplied.)

By pleading a set-off and insisting throughout the proceedings of the lower court and even upon appeal, that they are entitled jointly to set off damages, the defendants have admitted that the indebtedness to plaintiff for the installation of plumbing and heating is a joint obligation and are now estopped to raise a defense as to Cecelia Andres based upon coverture. Defendants are estopped to assert that Cecelia Andres is exempt from liability for whatever unpaid balance is due on account of the plumbing and heating in question.

For want of showing by defendants of the amount of their damages, the judgment appealed from is affirmed. Other questions raised become, by such decision, unnecessary to decide. Costs to plaintiff.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.